IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WILLIAM S. KILROY, JR., | § | CASE NO. 05-90083 |
| Debtor | § | Chapter 7 |
| | § | |

| | | |
|---|---|---|
| MARGARET NIBBI, ROBERT L. NIBBI, | § | Adversary No. 06-03324 |
| CHARLES M. SMYTHE, JR., ANDREW | § | |
| J. BEGGINS, and LORI A. BEGGINS | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| WILLIAM S. KILROY, JR. | § | |
| Defendant | § | |

MEMORANDUM OPINION ON (1) DEFENDANT'S AMENDED MOTION TO
DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM; AND (2) PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT
[Docket Nos. 7 and 8]

## I. INTRODUCTION

On July 11, 2006, the Court held a hearing on: (1) the Defendant's Amended Motion to Dismiss for Failure to State a Claim; and (2) the Plaintiffs' Motion for Leave to Amend Complaint. The Court grants the Plaintiffs' Motion for Leave to Amend Complaint. Further, based on the Plaintiffs' Amended Complaint, the Court denies in part, and grants in part, the Defendant's Amended Motion to Dismiss for Failure to State a Claim.

The Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52 as incorporated into Federal Rule of Bankruptcy Procedure 7052. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The

Court reserves the right to make any additional findings and conclusions as may be necessary or as requested by any party.

## II. FINDINGS OF FACT [1]

### A.    Background Facts

1.    Final Arrangements, LLC (FAL), a Delaware limited liability company, was owned by William S. Kilroy, Jr. (the Debtor of the Defendant), his mother Lora Jean Kilroy (Mrs. Kilroy), and T. Layng Guerriero (Guerriero). [2] [Docket No. 9, ¶ 9,10.] [3]

2.    In the summer of 2000, Guerriero solicited Margaret Nibbi, Robert Nibbi, Charles Smythe, Andrew Beggins, and Lori Beggins (collectively, the Plaintiffs) to invest in FAL via purchasing a partnership interest in Aegis 2000 Partners, L.P (Aegis 2000). [Docket No. 9, ¶ 13-15.]

3.    Aegis 2000 was a Texas limited partnership and existed for the sole purpose of investing in FAL. [Docket No. 9, ¶ 11.] The Plaintiffs became limited partners in Aegis 2000, and the

---

[1] The Findings of Fact set forth in this Memorandum Opinion are made solely for disposition of the Defendant's Motion to Dismiss [Adversary No. 06-03324, Docket No. 7] and the Plaintiffs' Motion for Leave to Amend Complaint [Adversary No. 06-03324, Docket No. 8]. The Court makes these Findings of Fact by accepting the allegations in the light most favorable to the non-movants—here, the Plaintiffs—pursuant to applicable law. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002). Although the Plaintiffs have survived the Defendant's Motion to Dismiss, they now must meet their burden to establish that they are entitled to obtain the relief that they seek. They may not rely upon the Findings of Fact set forth in this Memorandum Opinion concerning the Defendant's Motion to Dismiss. *Fair Oaks Dodge v. Skinner (In re Skinner)*, 175 B.R. 613, 614 n.1 (Bankr. E.D. Va. 1994); *Burrell v. Colonial Storage Ctr. (In re Burrell)*, Adv. No. 94-3080-T, 1994 WL 841219, n.2 (Bankr. E.D. Va. Nov. 10, 1994).

[2] Guerriero brought a separate adversary proceeding (Adv. No. 06-3320) against the Debtor styled: T. Layng Guerriero, individually, W & L Ins. Holdings Co., L.L.C., a Delaware limited liability company, and Aegis Ins. Holdings Co., L.P., a Delaware limited partnership v. William S. Kilroy, Jr. A memorandum opinion on the Debtor's Motion to Dismiss in that case has already been published. *Guerriero v. Kilroy (In re Kilroy)*, 2006 Bankr. LEXIS 2944 (Bankr. S.D. Tex. October 30, 2006). That case may provide further elucidation on the various business ventures of the Debtor and Guerriero.

[3] Unless otherwise noted, all docket references are to the docket in Adversary No. 06-03324.

general partner of Aegis 2000 was Aegis Asset Management, Inc. (Aegis Asset). *Id.* The Debtor is the CEO and sole shareholder of Aegis Asset. *Id.*

4. For the purpose of making presentations to potential outside investors, the Debtor and his attorneys prepared a Private Placement Memorandum (the PPM), dated August 15, 2000, on behalf of FAL. [Docket No. 9, ¶ 10.] Guerriero presented the PPM to each of the Plaintiffs during the sales pitch. [Docket No. 9, ¶ 13-15.]

**B. Procedural History**

1. On June 6, 2005, the Plaintiffs filed suit against the Debtor in the 190th Judicial District of Harris County, Texas (the Harris County Lawsuit). [Docket No. 9, ¶ 23.]

2. On October 13, 2005, the Debtor filed a voluntary Chapter 7 petition. [Case No. 05-90083, Docket No. 1.]

3. In February of 2006, the Plaintiffs filed a notice of nonsuit against the Debtor in the Harris County Lawsuit. [Docket No. 19, ¶ 6.] No discovery had taken place in the Harris County Lawsuit, and the Debtor had filed only a Suggestion of Bankruptcy in that suit. [Docket No. 19, ¶ 7.]

4. On February 1, 2006, the Plaintiffs, along with the Margaret Ann Guerriero Trust and Sterling Bank, filed an Agreed Motion to Extend the Time Within Which [those parties] May File Objections to the Dischargeability of Debt Under § 523.[4] [Case No. 05-90083, Docket No. 72.] On February 6, 2006, the Court granted this Motion to Extend which extended the deadline to file such objections until April 7, 2006. [Case No. 05-90083, Docket No. 82.]

---

[4] Unless otherwise noted, all sections references refer to 11 U.S.C.

3

5.      On March 13, 2006, the certificate of registration of Aegis 2000 was cancelled by the Secretary of the State of Texas for failure to file periodic reports. [Docket No. 16, Ex. D.]

6.      On April 7, 2006, the Plaintiffs filed their Original Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523. [Docket No. 1.]

7.      On May 12, 2006, the Debtor filed a Motion to Dismiss Complaint for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) and 9(b). [Docket No. 6.]

8.      On May 19, 2006, the Debtor filed an Amended Motion to Dismiss Complaint for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) and 9(b) (the Amended Motion to Dismiss). [Docket No. 7.]

9.      On June 8, 2006, the Plaintiffs filed a Motion for Leave to Amend Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523 (the Motion for Leave to Amend Complaint) [Docket No. 8], as well as their proposed Amended Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523 [Docket No. 9].

10.     On June 8, 2006, the Plaintiffs also filed their Response to the Debtor's Amended Motion to Dismiss. [Docket No. 10.]

11.     On June 28, 2006, the Debtor filed his Objection to the Plaintiffs' Motion for Leave to Amend Complaint [Docket No. 15] (the Debtor's Objection) and also filed a Reply to the Plaintiffs' Response to the Amended Motion to Dismiss. [Docket No. 16.]

12.     On July 10, 2006, the Plaintiffs filed a Reply to the Debtor's Objection to the Motion for Leave to Amend Complaint. [Docket No. 19.]

13.     On July 11, 2006, this Court held a hearing on the Debtor's Amended Motion to Dismiss, the Plaintiffs' Motion for Leave to Amend Complaint, and the Debtor's Objection to the Plaintiffs' Motion for Leave to Amend Complaint. [July 11, 2006 Docket Entry.]

14.     On July 12, 2006, the Debtor filed a Sur Reply to the Plaintiffs' Response to the Objection to Motion for Leave to Amend Complaint. [Docket No. 20.]

## III. CONCLUSIONS OF LAW

### A.     Jurisdiction and Venue

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). This lawsuit is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).  Venue is proper pursuant to 28 U.S.C. § 1409.

### B.     The Plaintiffs' Amended Complaint should be permitted.

The Court must first determine whether the Plaintiffs should be allowed to amend their Original Complaint.  For the reasons stated below, this Court finds that the Plaintiffs' Motion for Leave to Amend Complaint should be granted.  The result of this conclusion is that, in determining whether the Plaintiffs have successfully stated a claim, the Court will analyze the Plaintiffs' Amended Complaint [Docket No. 9] instead of the Plaintiffs' Original Complaint [Docket No. 8].

The Plaintiffs' Motion for Leave to Amend Complaint relies upon Federal Rule of Civil Procedure 15, which is made applicable through Federal Rule of Bankruptcy Procedure 7015. Under Federal Rule 15(a), "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . ." Fed. R. Civ. P. 15(a).  Here, the Debtor had filed his

Amended Motion to Dismiss prior to the Plaintiffs' attempt to amend. Thus, Rule 15(a) requires that the Plaintiffs seek leave from the Court to amend, and "leave shall be freely given when justice so requires." *Id.*

There are several well-established justifications to deny leave to amend despite the liberal standard articulated in Rule 15(a). These reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Wright v. Allstate Ins. Co.,* 415 F.3d 384, 391 (5th Cir. 2005) (quoting *Foman,* 371 U.S. at 182). The Fifth Circuit has focused on the importance of whether the non-movant would be unfairly prejudiced by allowing the amendment, calling this "the touchstone of the inquiry under rule 15(a)." *Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242, 246 (5th Cir. 1997).

The Plaintiffs assert that the Debtor will be not prejudiced by the amendment because: (1) they are not adding any claims or parties, but simply clarifying allegations that were already made in the Original Complaint; (2) they are correcting and addressing issues raised by the Debtor in his Amended Motion to Dismiss; (3) they have not previously amended their Original Complaint; and (4) discovery has yet to begin in this proceeding. [Docket No. 8.]

The Debtor's Objection to the Motion for Leave to Amend Complaint argues that the Plaintiffs should not be allowed to amend due to: (1) undue delay; and (2) the futility of the amendment. [Docket No. 15, ¶ 5.] The Debtor argues that the Plaintiffs have delayed because they had sufficient time to craft a proper complaint. [*Id.,* ¶ 7.] The Plaintiffs first learned of the Debtor's alleged misrepresentations and misappropriations that form the basis of their complaint in the

summer of 2003. [Docket No. 9, ¶ 20.] On June 6, 2005, the Plaintiffs filed the Harris County Lawsuit against the Debtor based on the same conduct at issue in this Adversary Proceeding. [Docket No. 15, Ex. A.] Thus, the Debtor argues that the Plaintiffs have had enough knowledge to sufficiently plead a complaint in state court since at least December of 2005, and they were already given a 60-day extension by this Court to file their complaint.

The Debtor's argument fails to allege how this delay was "undue." The Debtor ignores the fact that he consented to the Agreed Motion, which gave the Plaintiffs an extra 60 days to file this § 523 complaint, and the Debtor now asks this Court to consider that the Plaintiffs waited until the 60th day to file the complaint as evidence of undue delay.[5] The Amended Complaint does not attempt to add any additional claims or parties to the adversary proceeding, and no discovery has taken place. Therefore, this Court finds that the Plaintiffs have not unduly delayed in filing their Motion to Amend Complaint.

Next, the Debtor argues that allowing the Plaintiffs to amend their complaint would be futile because it is impossible for the Plaintiffs to allege a cause of action under either §§ 523(a)(2) or (a)(4). [Docket No. 15, p. 3-12.] The Court finds that the Debtor's Objection mistakenly attempts to alter the nature of the Plaintiffs' claims and relies on arguments relevant to the Debtor's Motion to Dismiss in asserting that amendment would be futile. The Debtor spends a great deal of time and effort arguing that the Plaintiffs' proposed Amended Complaint essentially sets forth derivative claims of FAL in the guise of direct claims against the Debtor. Further, the Debtor makes multiple

---

[5] Although the Plaintiffs' complaint was timely filed within the extended deadline, waiting until the eleventh hour is not a wise course of action. *See Gulf Coast Bank and Trust Co. v. Mendel (In re Mendel)*, Adv. No. 06-3338, 2006 Bankr. LEXIS 3253 (Bankr. S.D. Tex. Sept. 19, 2006) (Plaintiffs filed their complaint on the last possible day and mistakenly named the wrong defendant. This Court did not allow the plaintiffs in Mendel to amend their complaint to correctly name the debtor after the deadline to file had passed).

alternative arguments on why: (1) alter ego liability does not apply to LLCs under Delaware law; (2) even if alter ego liability does apply, the Plaintiffs lack standing to bring alter ego claims because FAL is property of the Debtor; and (3) even if alter ego liability does apply and the Plaintiffs have standing, the Plaintiffs have not properly alleged an alter ego claim against the Debtor. [Docket No. 15, p. 3-5.]

The Debtor's third argument, that Plaintiffs have not properly alleged an alter ego claim, reveals that the Debtor has not set forth any particular argument which is directly applicable to the issue of amendment. If the Plaintiffs were seeking to amend their complaint for the purpose of adding a claim as a representative of FAL, then this line of argument would be appropriate. For purposes of considering whether the Plaintiffs should be allowed to amend their complaint, the Court finds that these arguments by the Debtor are misplaced. However, the Plaintiffs, in their pleadings, both substantively and in the manner the complaint is styled, and at the hearing on July 11, 2006, repeatedly have stated that they are not asserting anything but their own rights through direct claims. The Court finds that the Debtor's disagreement with that position–and the lengthy argument that these claims rightfully belong to FAL–should be not be considered in adjudicating the Plaintiffs' Motion for Leave to Amend Complaint. Instead, the Court will address these arguments within the context of the Debtor's Motion to Dismiss Complaint.

In conclusion, the Court finds that none of the five grounds to deny leave to amend are present. The Debtor has failed to show how he would be unfairly prejudiced by allowing the Plaintiffs leave to amend and was, therefore, unable to establish undue delay. There was no bad faith or dilatory motive on the part of the Plaintiffs. This was the first attempted amendment. Finally, the Court finds that the Debtor's arguments as to why amendment would be futile are more appropriately

viewed as arguments as to why the Debtor's Motion to Dismiss should be granted. Thus, the Court grants the Plaintiffs' Motion for Leave to Amend Complaint and will look to the substance of the Amended Complaint in determining whether the Plaintiffs have successfully stated a claim. A separate order will be entered on the docket granting the Plaintiffs' Motion for Leave to Amend Complaint.

## C.   Standard of Review for the Debtor's Motion to Dismiss

Federal Rule of Civil Procedure 9(b), which is made applicable by Bankruptcy Rule 7009, requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The Fifth Circuit has observed that "[p]leading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). Essentially, "the who, what, when, and where must be laid out before access to the discovery process is granted." *Williams,* 112 F.3d at 178. To prevent dismissal of the complaint for failure to plead with particularity, the plaintiff must "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001) (quoting *Williams,* 112 F.3d at 177). To plead scienter "requires more than a simple allegation that a defendant had fraudulent intent . . . a plaintiff must set forth *specific facts* that support an inference of fraud." *Tuchman,* 14 F.3d at 1068. The higher pleading requirements of

Federal Rule of Civil Procedure Rule 9(b) only applies to allegations that involve fraud or mistake. Sections 523(a)(2)(A) and (a)(4) both require the Plaintiffs to establish fraud, and therefore, these claims are clearly subject to Rule 9(b).

## D.    The Plaintiffs' General Factual Allegations

The Plaintiffs allege that Aegis Asset, Aegis 2000, FAL, and Continental Computer Specialists, Inc. (Continental)[6] were operated as alter egos of the Debtor at all times. [Docket No. 9, ¶ 12.] They claim that "the Debtor used FAL and Continental like his personal checking account, ignor[ing] all associated corporate formalities." [Docket No. 9, ¶ 20.]

In the summer of 2000, Guerriero solicited the Plaintiffs to invest in FAL. Guerriero proposed that the Plaintiffs purchase limited partnership interests in Aegis 2000; and, in turn, Aegis 2000 would invest in FAL. [Docket No. 9, ¶ 13-15.] The Plaintiffs allege that Guerriero was acting as an agent and at the direction of the Debtor. [Docket No. 9, ¶ 13-15.] As discussed below, the Plaintiffs allege that Guerriero delivered the PPM to them as part of the investment meetings and that the PPM included material misrepresentations. Also, the Plaintiffs allege that Guerriero made oral representations about FAL and the potential return on investment. *Id.* Specifically, the Plaintiffs allege that:

> [T]he PPM, which was presented to Plaintiffs for the purpose of soliciting their investment, incorporated and briefly detailed FAL's operating agreement, which explained how FAL and Continental would be operated. Specifically, the PPM stated:
>
> a.    that the net proceeds from the Plaintiffs' investment . . . would be used for working capital (*see* PPM p. 18);

---

[6] Continental Computer Specialists, Inc. is a wholly owned subsidiary of FAL. [Docket No. 9, ¶ 9.]

10

b.    that FAL would "prepare and furnish at Company expense audited annual financial statements for the Company for all years ended following the closing" (*see* PPM p. 5);

c.    that FAL was in the process of searching for a "suitable chief executive officer and several other high-level employees" (*see* PPM p. 10);

d.    that FAL intended to seek patent registration and protection and register its trademarks and service marks (*see* PPM p. 12).

[Docket No. 9, ¶16.] Additionally, the Plaintiffs allege that the Debtor omitted certain material information from the PPM such as the control that Mrs. Kilroy had over the company and the procedure for removing board members. [Docket No. 9, ¶ 17.]

Further, the Plaintiffs allege that the representations made in the PPM were false because, at the time the PPM was prepared, the Debtor intended to use the Plaintiffs' investment for his own personal expenses and not to benefit FAL. [Docket No. 9, ¶ 18.] The Plaintiffs also claim that the Debtor did not intend to: (1) have audited financial statements prepared; (2) allow anyone other than himself to be the CEO; (3) protect FAL's intellectual property; or (4) disclose to investors that Mrs. Kilroy was integral to the daily operations of FAL. *Id.* The Plaintiffs allege that they detrimentally relied on these misrepresentations by the Debtor when they decided to collectively invest $325,000.00 in Aegis 2000. [Docket No. 9, ¶ 19.]

In the summer of 2003, the Plaintiffs allege that they discovered evidence that the Debtor had been misappropriating funds from FAL and commingling company funds with his personal assets. [Docket No. 9, ¶ 20.] The Plaintiffs claim that the diverted funds exceeded $500,000.00. *Id.* This money was allegedly used to pay personal claims that the Debtor's ex-wife had against him in their custody battle as well as for gifts and vacations for the Debtor's new wife. *Id.*

Having thus laid out the general factual allegations made by the Plaintiffs, the Court next

considers whether they have sufficiently pled a claim under § 523(a)(2)(A) for common law fraud or false pretenses and a claim under § 523(a)(4) for embezzlement, larceny, or fraud or defalcation while acting in a fiduciary capacity.   The misrepresentations made in the PPM and orally by Guerriero are the basis of the Plaintiffs' § 523(a)(2)(A) claim, *i.e.*, that the Debtor, through FAL as his alter ego, delivered the PPM and instructed Guerriero what to say in order to induce the Plaintiffs' investment.   The mismanagement and misappropriation of money from FAL and its subsidiary, Continental, are the basis of the Plaintiffs' claim under § 523(a)(4), i.e., the Debtor's action in running FAL harmed the Plaintiffs as limited partners in Aegis 2000.

**E.    The Plaintiffs have successfully pled a claim under § 523(a)(2)(A).**

The Plaintiffs allege that, as to a cause of action under § 523(a)(2)(A), the Debtor: (1) was responsible for the content of the PPM, which included misrepresentations and omissions; and (2) directed Guerriero to make certain oral representations in connection with the PPM.  [Docket No. 9, ¶ 28.]  The Plaintiffs do not differentiate between a claim for false pretenses and actual fraud.

The Plaintiffs allege that the PPM misrepresented the following facts: "(i) the intended use of Plaintiffs' investment; (ii) the intended dissemination financial information to Plaintiffs regarding FAL; (iii) the Debtor's real intentions regarding seeking a competent replacement chief executive officer for FAL; and (iv) the Debtor's plans regarding protecting and preserving FAL's patents, trademarks and service marks." [Docket No. 9, ¶ 27.]  The Plaintiffs further allege that there were material omissions from the PPM including the involvement of Mrs. Kilroy. *Id.*

The Plaintiffs allege that these misrepresentations and omissions were made with the intent to deceive and induce the Plaintiffs into making an investment in FAL, and that the Plaintiffs would not have made the investment without those misrepresentations. [Docket No.9, ¶ 27.]  The Plaintiffs

12

further claim that their reliance on these misrepresentations was reasonable and led to the loss of their investment. *Id.*

In order to establish an exception to discharge of a debt for "money, property, services, or an extension, renewal, or refinancing of credit," the debt must have been obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The creditor "must prove by a preponderance of evidence that the debt is nondischargeable." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995) (citing *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 659, 112 L. Ed. 2d 755 (1991)). Additionally, the Fifth Circuit has maintained a distinction between actual fraud and false pretenses or representations. *See RecoverEdge*, 44 F.3d at 1292-93 (citations omitted).

## 1.    False Representation

The Fifth Circuit has explained that "for a debtor's representation to be a 'false representation or false pretense' under § 523(a)(2), it 'must have been: (1) [a] knowing and fraudulent falsehood, (2) describing past or current facts, (3) that was relied on by another party.'" *RecoverEdge L.P.*, 44 F.3d at 1293 (citations and alterations omitted). Here, the Plaintiffs have alleged that: (1) the PPM included specific representations about how FAL would use their investment; (2) at the time the Debtor prepared the PPM on behalf of FAL, the Debtor did not intend to utilize the investment in FAL for its proper purpose; and (3) Aegis 2000 and FAL were merely tools that the Debtor used to fraudulently induce the Plaintiffs into making investments. Additionally, the fraudulent intent necessary for a claim under § 523(a)(2) "may be averred generally" according to Rule 9(b). The current facts that the Plaintiffs allege were misrepresented were not only the Debtor's intention to

13

run the company, but also the vital role that Mrs. Kilroy played in the running of the Debtor's business ventures, the intention to seek patent registration, and the company's plan to hire professional upper-level management to replace the Debtor. The Plaintiffs have also clearly alleged that they relied on the misrepresentations in the PPM in deciding to invest in Aegis 2000. Thus, the Plaintiffs have satisfied the three elements of a claim for false representation or false pretenses.

Therefore, whether the Plaintiffs have sufficiently pled a claim under § 523(a)(2)(A) for false representation or false pretenses turns upon whether the misrepresentations that they allege, namely the content of the PPM and Guerriero's statements, can be imputed to the Debtor through either alter ego liability or piercing the corporate veil of FAL. These issues are discussed in subsection 3.

## 2.    Actual Fraud

The Fifth Circuit has stated:

> In order to prove nondischargeability under an "actual fraud" theory, the objecting creditor must prove that: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations."

*RecoverEdge L.P.*, 44 F.3d at 1293 (quoting *Keeling v. Roeder* (*In re Roeder*), 61 B.R. 179, 181 (Bankr. W.D. Ky. 1986)).

Again, whether the Plaintiffs have pled a claim for actual fraud will turn upon whether it is possible for the alleged facts to be attributed to the Debtor. The elements of fraud are nearly the same as for false representation or false pretenses. The Plaintiffs claim that: (1) the Debtor knew that the statements in the PPM were false at the time it was written; (2) the Debtor's intention in making the misrepresentations was to induce the Plaintiffs to invest; (3) the Plaintiffs relied in good

faith on the content of the PPM; and (4) as a result, they lost their collective $365,000.00 investment. Having determined that all elements of a § 523(a)(2)(A) claim have been satisfied, the Court next analyzes whether the statements alleged by the Plaintiffs can be said to be made by the Debtor under alter ego or veil piercing theories.

### 3.    Did the Debtor make the misrepresentations alleged by the Plaintiffs?

The Plaintiffs have alleged that two separate misrepresentations were made to the them: (1) the oral statements of Guerriero; and (2) the written statements in the PPM.  Since the Debtor did not directly make either of those sets of statements to the Plaintiffs, the Court must determine if the Debtor can be responsible for each misrepresentation under some legal theory.

First, the oral statements made by Guerriero at the investment meetings with the Plaintiffs have not been pled with sufficient particularity under Rule 9(b).  As stated previously, since this is a case of fraud, the Plaintiffs bear the burden of pleading the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."  *Williams*, 112 F.3d at 177 (citations omitted).  In reference to any representations made by Guerriero, the Amended Complaint states, "Guerriero made several oral representations about how FAL would be operated and about the [Plaintiffs'] potential return on investment." [Docket No. 9, ¶ 13.]  This is the entirety of what the Plaintiffs have alleged about Guerriero's statements. The Plaintiffs have failed to plead the most important part: the "contents of the false representations." It is insufficient that they have stated the who, where, when, and why; the absence of the what is fatal.  Therefore, the Plaintiffs are unable to use Guerriero's oral statements as the basis of their § 523(a)(2)(A) claim.

In contrast, the Plaintiffs explained in detail what false representations were made in the PPM and how they were fraudulent. Therefore, the written allegations included in the PPM are the only grounds upon which the Plaintiffs can base their § 523(a)(2)(A) claim. Next, the Court analyzes whether the PPM, which was prepared by the Debtor and his attorney on behalf of FAL, can be attributed directly to the Debtor through piercing the corporate veil of FAL by way of offensive collateral estoppel or alter ego.

      a.     **The Court must apply Delaware law to determine whether to pierce the veil of FAL.**

FAL is a Delaware limited liability company. [Docket No. 15, ¶ 11.] This Court, sitting in Texas, must apply Texas' conflicts rule on choice of law to determine which state's substantive law to apply. *See Alberto v. Diversified Group, Inc.*, 55 F.3d 201, 203 (5th Cir. 1995)(citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 . S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941)). The Texas Business Corporation Act states:

> only the laws of the jurisdiction of incorporation of a foreign corporation shall govern (1) the internal affairs of the foreign corporation, including but not limited to the rights, powers, and duties of its board of directors and shareholders and matters relating to its shares, and (2) the liability, if any, of shareholders of the foreign corporation for the debts, liabilities, and obligations of the foreign corporation for which they are not otherwise liable by statute or agreement.

TEX. BUS. CORP. ACT ANN. art. 8.02 (Vernon 2003). FAL is a limited liability company incorporated in Delaware, and thus the substantive laws of Delaware apply in determining whether to allow FAL's corporate veil to be pierced.

This Court recognizes three potential approaches for piercing FAL's veil under Delaware law: (1) using offensive collateral estoppel under Texas Law; (2) using offensive collateral estoppel under Delaware law; or (3) using the alter ego doctrine.

16

**b.** **Piercing FAL's corporate veil under Delaware law with Texas offensive collateral estoppel**

Delaware law allows a court to pierce the corporate veil of an entity when there is fraud or when a subsidiary is the alter ego of its owner. *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992) (holding that because the principal was the alter ego of the corporation, the corporation's veil could be pierced and the principal held liable for the corporation's debts) (citing *Mabon, Nugent & Co. v. Tex. Am. Energy Corp.*, 1990 WL 44267, at *5 (Del. Ch. Apr. 12, 1990)). In 2005, in a prior action, *George N. Kaiser, Sr. et al. v. Aegis Insurance Holding, L.P., et al.*, in the 131st Judicial District in Bexar County (the Bexar County Suit), a jury found the Debtor to be the alter ego of FAL.[7] [Docket No. 19, Ex. B.] In order to prevent the Debtor from trying to relitigate whether FAL is his alter ego, the doctrine of offensive collateral estoppel may be applied.

Offensive use of collateral estoppel "occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 4, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). In deciding whether to allow the use of offensive collateral estoppel, the courts must use special care when ascertaining whether the defendant had a full and fair opportunity to litigate the issue and whether preclusion would lead to unjust results. *Johnson v. United States*, 576 F.2d 606, 614 (5th Cir. 1978).

---

[7] "Courts are frequently imprecise in describing whether it is the corporation which is the alter ego of its shareholder, or vice versa. In most circumstances an alter ego relationship is probably a two-way street. That is, where the shareholder is the alter ego of the corporation, the corporation is likewise the alter ego of its shareholder." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 n. 12 (D. Del. 1989). In this Memorandum Opinion, this Court will more precisely consider FAL to be the alter ego of the Debtor, although recognizing that the Bexar County Court's wording makes no legal difference in the analysis.

This Court must determine which law applies with regard to collateral estoppel. A "court should look to the rules of collateral estoppel of the state law that governs the second suit." *Albanese v. Emerson Elec. Co.*, 552 F.Supp. 694, 698 (D. Del. 1982). Accordingly, Delaware law applies to the issue of whether to pierce the corporate veil. Delaware courts follow the Restatement (Second) of Conflicts of Law § 95 comment g which states: "What issues are determined by a valid judgment is determined . . . by the local law of the State where the judgment was rendered." *Harper v. Del. Valley Broadcasters, Inc.*, 743 F.Supp. 1076, 1082 (D. Del. 1990). Thus, under Delaware law, the law of collateral estoppel of the state where the first judgment was rendered will determine the scope of collateral estoppel in the second case. *Albanese*, 552 F. Supp. at 698. Because a Texas state court found FAL to be the alter ego of the Debtor, Texas law of collateral estoppel will determine the scope of collateral estoppel for this issue in the instant adversary proceeding.

Furthermore, federal courts are required to give the same preclusive effect to state court judgments that those judgments would be given in state courts from which the judgments were rendered. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); *see also Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1201 (5th Cir. 1996) (explaining that under the full faith and credit statute, 11 U.S.C. § 1738 (2006, because a judgment was rendered in a Texas state court against the debtor, Texas rules of issue preclusion apply in federal court). For example, in *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998), the Fifth Circuit held that a state court jury's finding that the debtor did not breach any fiduciary duty should have been given preclusive effect in an adversary proceeding against the debtor in bankruptcy court regarding whether there was fraud or defalcation while acting in a fiduciary capacity.

Texas recognizes the doctrine of offensive collateral estoppel, provided that the party against whom collateral estoppel is now being asserted was either a party or in privity with a party in the first suit.[8] *DeLeon v. Lloyd's, London*, 259 F.3d 344, 348 (5th Cir. 2001)(citing *Logan v. McDaniel*, 21 S.W.3d 683, 689 (Tex. App.—Austin 2000 pet. denied); *see also Bank of Heflin, Heflin, Ala. v. Landmark Inns of America, Inc.*, 604 F.2d 354 (5th Cir. 1979) (holding that where the maker had been found liable on the guaranty in a prior action, the bank could assert offensive collateral estoppel to prevent the maker from denying his liability on the guaranty).

A Texas state court issued a judgment finding that FAL is the alter ego of the Debtor. The state court rendered the Debtor liable for all sums owed to the plaintiffs[9] by FAL. [Docket No. 19.] Now, in the Adversary Proceeding pending in this Court, the Debtor denies that FAL is his alter ego. The Plaintiffs in this suit should be able to offensively collaterally estop the Debtor from asserting that FAL is not his alter ego because: (1) the Debtor received a full hearing on the issue in the Bexar County Suit; (2) determination of the alter ego issue was essential to the judgment of the Debtor's liability in the Bexar County Suit; and (3) the Debtor was a party in the prior suit. Additionally, the Plaintiffs in the Adversary Proceeding at bar could not have reasonably joined in the prior state court action against the Debtor because in that suit, those plaintiffs were suing Aegis Insurance Holding,

---

[8] "Under Texas law, a party seeking to invoke collateral estoppel must establish that: (1) the facts sought to be tried were fully and fairly tried in a prior suit; (2) those facts were essential to the judgment in the first suit; and (3) the parties were cast as adversaries in the first suit." *Deleon*, 259 F.2d at 348 (citation omitted). Under offensive, non-mutual collateral estoppel, the plaintiff must still establish these first two elements, but the third element changes to provide that the party against whom collateral estoppel is being asserted was either a party or in privity with a party in the first suit. *Id.* Thus, that the parties were adversaries in the prior suit is not required under offensive collateral estoppel. *Id.*

[9] The plaintiffs referred to here were the plaintiffs in the Bexar County Lawsuit and did not include any of the Plaintiffs currently before this Court in this Adversary Proceeding.

L.P.(AIH),[10] along with the Debtor and FAL.  The Plaintiffs are limited partners of Aegis 2000 and would not have had standing to maintain any action against AIH.

This Court holds that the Debtor is collaterally estopped from denying that FAL is his alter ego.  The Plaintiffs could not have reasonably joined in the prior suit against the Debtor, and it would not be unjust and unfair to prevent the Debtor from now denying that FAL is his alter ego because this issue was already fully and adequately litigated and determined in the Bexar County Suit.  Because Delaware law allows a court to pierce the corporate veil of an entity when the subsidiary is found to be the alter ego of its owner, this Court may pierce the corporate veil of FAL due to the Texas state court's finding that FAL is the alter ego of the Debtor.  Because this Court may pierce FAL's corporate veil by applying the doctrine of offensive collateral estoppel under Texas law, this Court holds that the Debtor is responsible for any statements made by FAL in the PPM to the Plaintiffs.  Thus, the Plaintiffs have standing to bring this Adversary Proceeding against the Debtor.

### c.  Piercing FAL's corporate veil under Delaware law with Delaware offensive collateral estoppel

Alternatively, if Texas offensive collateral estoppel does not apply, the same result may be achieved using Delaware offensive collateral estoppel.  Under Delaware law, mutuality has been abandoned as a prerequisite for the assertion of collateral estoppel. *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1216-17 (Del. 1991) (defining mutuality as requiring "a party attempting to bar

---

[10]AIH was a partnership which predates the transactions at issue in the instant Adversary Proceeding.  The Debtor and Guerriero each owned 44.5% of AIH, Mrs. Kilroy owned 9.9%, and the remaining shares were owned by W&L Insurance Holdings.  [Adv. No. 06-3320, Docket No. 16, ¶ 10.]  W&L was the general partner of AIH, and the Debtor owned a 67% share in the company. [*Id.*]  Guerriero owned the other 33% of W&L. [*Id.*]  AIH created FAL for the purpose of acquiring Continental and bringing in outside investors.  [*Id.* at ¶ 14.]  AIH owned 67% of FAL, and the other one-third share was divided among the outside investors such as the Plaintiffs. [*Id.*]

an adversary from relitigating an issue to have been a party in the prior litigation or in privity with a

party in the prior litigation.").  The Delaware Superior Court observed:

> The requirement of mutuality must yield to public policy.  To hold otherwise would
> be to allow repeated litigation of identical questions, expressly adjudicated, and to
> allow a litigant having lost on a question of fact to re-open and re-try all the old
> issues each time he can obtain a new adversary not in privity with his former one.

*Coca Cola, Co. v. Pepsi-Cola, Co.*, 172 A. 260, 263 (Del. Super. Ct. 1934).  Thus, under Delaware

law it is no longer necessary that a litigant have been a party, or in privity with a party, in a prior

litigation in order to assert collateral estoppel.  *Columbia Cas. Co.*, 584 A.2d at 1217.  The rationale

for abandoning mutuality is to conserve judicial resources and promote finality.  *Id.*  at 1218 (citing

*Coca Cola, Co.*, 172 A. at 262-63).

In *Chrysler Corp. v. New Castle County*, 464 A.2d 75, 82 (Del. Super. Ct. 1983), the court

stated that "judicious use of offensive collateral estoppel is in accord with Delaware's established

policy to promote judicial economy."  Under Delaware law, the court has broad discretion in

determining when the use of offensive collateral estoppel is appropriate.  *Albanese*, 552 F.Supp. 694

at 700 (citing *Parklane*, 439 U.S. at 331).

Thus, this Court, under Delaware offensive collateral estoppel, can–and does–hold that the

Debtor is estopped from denying that FAL is his alter ego.  Since the Debtor is unable to deny that

he treated FAL as his alter ego, he can be held liable for statements made by FAL's agents.  Thus,

because FAL is the alter ego of the Debtor, the Plaintiffs, contrary to the Debtor's contentions have

successfully stated a claim.

      **d.**      **Piercing FAL's corporate veil under Delaware law with Delaware alter
ego doctrine**

Alternatively, if offensive collateral estoppel under Texas or Delaware law cannot be applied to prevent the Debtor from denying that FAL is his alter ego, FAL's corporate veil may still be pierced by directly using an alter ego theory under Delaware law.  Piercing the veil is appropriate "when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." *Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3rd Cir. 1979) (quoting *Zubik v. Zubik*, 384 F.2d 267, 272 (3rd Cir. 1967)).  An "alter ego theory" is frequently used interchangeably with "piercing the corporate veil" and "disregarding the corporate entity." *Mobil Oil*, 718 F. Supp. at 266.

Under Delaware law, numerous factors are important to an alter ego analysis, "but no single factor can justify a decision to disregard the corporate entity." *Alberto v. Diversified Group, Inc.*, 55 F.3d 201, 205 (5th Cir. 1995) (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537, at *5 (Del. Ch. 1989)).  Such factors include:

> whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general the corporation simply functioned as a facade for the dominant shareholder.

*Id.* at 205 (citing *Harco*, 1989 WL 100537, at *4).

Thus, "[t]o prevail on an alter ego claim under Delaware law, a plaintiff must show (1) that the parent and the subsidiary 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness . . . is present." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2nd Cir. 1995) (quoting *Harper v. Del. Valley Broadcasters, Inc.*, 743 F.Supp. at 1085-86).  Under an alter ego theory for piercing the corporate veil, "the corporation must be a sham and exist for no other purpose

22

than as a vehicle for fraud." *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999).[11]   In determining whether to pierce the corporate veil, the court looks to "exclusive domination and control" over an entity so that it no longer has its own legal or independent significance. *Id.* (citations omitted).

The Plaintiffs allege that the Debtor is the chairman of the board, president, and chief executive officer of FAL and that he solicited substantially all of the equity investment in FAL. [Docket No. 9, ¶ 9.] The Debtor was also one of the initial investors in FAL, along with his mother, and Allen Walker. *Id.* The Plaintiffs allege that the Debtor was impermissibly misappropriating FAL's assets and commingling his personal assets with FAL's assets. [Docket No. 9, ¶ 20.] They allege that the Debtor was using FAL like his own personal checking account and ignoring all associated corporate formalities. *Id.*   They further allege that the Debtor used FAL's funds in a personal lawsuit against his ex-wife and to pay for elaborate trips and gifts for his new wife. *Id.* The Plaintiffs also allege that the Debtor never intended to fulfill the representations made in the PPM, including that the net proceeds from the Plaintiffs' investment would be used for providing working capital, preparing and furnishing audited financial statements to the Plaintiffs, and finding a suitable chief executive officer to replace the Debtor. [Docket No. 9, ¶ 22.] In contrast, the Debtor contends that FAL was not a sham and existed for other purposes than as a vehicle for fraud. [Docket No. 15, ¶ 17]; *see DDH Aviation, L.L.C. v. Holly*, 2005 WL 770595 * 8-9 (N.D.Tex. 2005) (finding that a Delaware corporation was not the alter ego of the defendant because the corporation was a fully functioning company and not merely a sham or a vehicle for fraud).

---

[11] Although this Adversary Proceeding deals with piercing the veil of a partnership, the same language has been used by the Delaware Court of Chancery in the context of a corporation. *In re Sunstates Corp. Shareholder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001).

This Court, when ruling on a Rule 12(b)(6) motion, must "construe the complaint in favor of the plaintiff and assume the truth of all pleaded facts." *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citing *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999).  Based on all the Plaintiffs' allegations and after examining the factors involved in an alter ego analysis under Delaware law, particularly the siphoning of funds for personal use and the possibility of the corporation being a facade, this Court finds that the Plaintiffs have sufficiently pled facts that could establish FAL is the alter ego of the Debtor.  Again, this is a direct alter ego claim, which is in addition to the offensive collateral estoppel claim.  While FAL may have been a legitimate company in certain aspects, this Court, weighing all the factors in an alter ego analysis under Delaware law, finds that the Plaintiffs' allegations regarding to the Debtor's involvement in FAL are sufficient to allow the Plaintiffs to go forward with their cause of action in proving that FAL is the alter ego of the Debtor.[12]

e.      **Ability to Use Alter Ego Theory with Delaware Limited Liability Companies**

The Debtor contends that FAL's veil may not be pierced to hold the Debtor liable to the Plaintiffs because under the Delaware Limited Liability Company Act (DLLCA), members and managers have no liability for their activities relating to the LLC. [Docket No. 15, ¶ 12.]

---

[12] In preparing for the trial in this Adversary Proceeding, the Plaintiffs will have to determine whether they want to introduce evidence and adduce testimony to prove up the elements of alter ego to pierce the corporate veil of FAL. The Plaintiffs could decide not to take this approach, but, instead, simply rely upon this Court's ruling in this Memorandum Opinion that offensive collateral estoppel applies to estop the Debtor from denying that he is the alter ego of FAL. However, if an appellate court overturns this specific ruling, and the Plaintiffs have not separately proven up the elements of alter ego, then they will have no evidentiary record to support any finding of liability based upon an alter ego theory. Accordingly, the Plaintiffs have a trial strategy call that they must make. This Court wants to emphasize that if they decide that they want to prove up the elements of alter ego, this Court will allot sufficient time at trial for them to do so.

> Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.

DEL. CODE ANN. tit. 6, §18-303(a) (2006). The Plaintiffs argue that it would be completely unjust to allow wrongdoers who abuse a LLC not to be subjected to the same veil piercing as a corporation simply because alter ego jurisprudence in Delaware regarding LLCs has not been completely developed. [Docket No. 19, ¶ 23.]

There is a dearth of Delaware case law on the issue of whether an LLC's corporate veil may be pierced. However, this Court has found one case suggesting that an LLC's veil may be pierced. In *Trustees of the Village of Arden v. Unity Constr. Co.*, No. C.A. 15025, 2000 WL 130627, at *3 (Del. Ch. Jan. 26, 2000), the plaintiffs argued that a LLC's veil should be pierced because it was the alter ego of another LLC. While the court did not believe that the plaintiffs sufficiently alleged a case for an alter ego theory, the court nonetheless conceptually endorsed LLC veil piercing when it made specific references to corporate veil piercing in the context of LLCs. *See id.* at 3-4.

Based on this case, the Court finds that Delaware courts could apply veil piercing to LLCs under certain circumstances. Thus, this Court holds that FAL's corporate veil may be pierced to hold the Debtor liable for the alleged misrepresentations made by FAL in the PPM to the Plaintiffs.

### 4.      Conclusion regarding §523(a)(2)(A)

Because the Plaintiffs have alleged facts sufficient to show that FAL was the alter ego of the Debtor, either through offensive collateral estoppel or directly through veil piercing, their claim under § 523(a)(2)(A) will survive as to the claim that the PPM contained fraudulent misrepresentations.

However, because the Plaintiffs failed to allege with the necessary particularity under Rule 9(b) the specific content of the statements made by Guerriero, they will not be allowed to go forward on that particular § 523(a)(2)(A) claim. Next, the Court turns its attention to the Plaintiffs' other claim, which they bring under § 523(a)(4).

### F.      The Plaintiffs' factual allegations under § 523(a)(4)

The Plaintiffs argue that the Debtor was the sole owner and manager of Aegis Asset. [Docket No. 9, ¶ 32.]  Aegis Asset was the general partner of Aegis 2000, and the Plaintiffs were limited partners in Aegis 2000.  *Id.*  Therefore, the Plaintiffs assert that the Debtor was, in effect, the managing partner of Aegis 2000 and owed them a fiduciary duty as limited partners.  *Id.*  This fiduciary duty included the Aegis 2000 investment of the Plaintiffs' money in FAL.  The Plaintiffs then claim that "[w]hile acting in his capacity as a fiduciary to Plaintiffs, the Debtor used his position as an officer of FAL to steal more than $510,000 from FAL for his own personal benefit.  Plaintiffs as investors in FAL through Aegis 2000, were injured by the Debtor's misappropriation of FAL assets." *Id.*  The Plaintiffs further claim that the Debtor's diversion of money for his private use constitutes both defalcation and embezzlement for purpose of § 523(a)(4). [Docket No. 9, ¶ 33.]

#### 1.      The Plaintiffs have pleaded a direct claim for embezzlement under § 523(a)(4), but not a derivative claim on behalf of Aegis 2000.

Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property was entrusted, or in whose hands it has lawfully come." *Smith v. Hayden (In re Hayden)*, 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000) (citing *Miller*, 156 F.3d 598; *RAI Credit Corp. v. Patton (In re Patton)*, 129 B.R. 113, 116 (Bankr. W.D. Tex. 1991)).  Embezzlement requires a showing that: "(1) the debtor appropriated funds, (2) the appropriation was for the debtor's use or

benefit, and (3) the debtor did the appropriation with fraudulent intent." *Hayden*, 248 B.R. at 526

(footnotes, citations, and emphasis omitted).  Larceny is "the fraudulent and wrongful taking away

of the property of another with the intent to convert it to the taker's use and with intent to permanently

deprive that owner of such property." *Id.* at 525 (citations and emphasis omitted).

The Debtor argues that in order to state a claim under § 523(a)(4), the Plaintiffs must show

that the funds which were allegedly appropriated belonged to the Plaintiffs. [Docket No. 7, ¶ 33.]

Here, the alleged misappropriation was of FAL funds, of which only a portion had been contributed

by the Plaintiffs.  Additionally, the Plaintiffs' contribution of capital in FAL, through investing in

Aegis 2000, was made in 2000, and the alleged actions of the Debtor did not occur until 2003.  Thus,

the Debtor asserts that only FAL can have a derivative claim for embezzlement under § 523(a)(4).

The Debtor is incorrect in arguing that the only claim for embezzlement can be a derivative

suit owned by FAL.  The Court determined above that either through a direct alter ego claim, or

through the use of offensive collateral estoppel, the Plaintiffs have sufficiently pleaded facts showing

that the Debtor used FAL as his alter ego.  If the corporate fiction between FAL and the Debtor is

collapsed, it is possible that the entire transaction between the parties occurred as a single, albeit

lengthy, fraudulent event.  Thus, if FAL and the Debtor were no longer distinct entities, the Debtor

would not have been embezzling money from FAL, but rather from Aegis 2000.

The Plaintiffs have alleged in their Amended Complaint that the Debtor treated Aegis 2000

as his alter ego.  [Docket No. 9, ¶ 12.]  Unlike FAL, Aegis 2000 was not involved in the Bexar

County Suit.  Therefore, the Plaintiffs will not be able to use collateral estoppel, but instead will have

to establish, independently, their allegation that the Debtor did in fact treat Aegis 2000 as his alter

ego. The Plaintiffs allege that Aegis Asset was the managing partner of Aegis 2000, and the Debtor

was the 100% owner and CEO of Aegis Asset. [*Id.* at ¶ 11.]  Assuming, as this court must in

considering a motion under Rule 12(b)(6), that the Plaintiffs are correct in their allegation that Aegis

2000 was the alter ego of the Debtor, that would mean that there are no corporate entities standing

between the Debtor and the Plaintiffs.  With both FAL and Aegis 2000 collapsed into the Debtor, it

is the equivalent of the Plaintiffs having directly given their monies to the Debtor, who used Aegis

2000 and FAL as mere ruses.  Therefore, the Plaintiffs would have standing to bring a direct claim

for embezzlement against the Debtor.[13]

Assuming that the Plaintiffs have standing to make a direct claim under § 523(a)(4), the

remaining elements of embezzlement have been sufficiently pleaded.  The Plaintiffs assert that: (1)

the Debtor appropriated funds by using FAL funds for personal uses and commingling his personal

finances with the business; (2) the appropriation was for the Debtor's use or benefit because he used

the monies to pay for personal expenses such as vacations and bills for non-business related legal

fees; and (3) the Debtor appropriated the funds with fraudulent intent.  Thus, the Plaintiffs have

successfully pleaded a direct claim for embezzlement under Rule 9(b) with sufficient particularity to

survive the Debtor's Motion to Dismiss.

> **2.    The Plaintiffs have stated a claim for fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4).**

---

[13] It is important to note that if the Plaintiffs cannot prove that the Debtor was the alter ego of Aegis 2000, then they may not bring a derivative action for two reasons. First, the deadline to file a claim under § 523 was February 6, 2006. The Plaintiffs never brought a claim on behalf of Aegis 2000, and Aegis 2000 did not seek an extension to file when the Plaintiffs did on February 1, 2006. [Case No. 05-90083, Docket No. 72.] Second, Aegis 2000 lacks standing to bring a suit against the Debtor because its limited partnership status was cancelled for failure to file a periodic report with the Secretary of State as prescribed by Art. 6132a, §13.05 of the Texas Revised Limited Partnership Act. [Docket No. 10, Ex. B.] Failure to file a report caused the limited partnership to forfeit its right to transact business in Texas and to maintain any action, suit, or proceeding in a court of Texas.  Tex.Rev.Civ.Stat.Ann. Art. 6132a-1 §§ 13.06(a), (c) (Vernon 2006). Thus, as a result of Aegis 2000's cancellation, the Plaintiffs cannot bring an action on behalf of Aegis 2000.

In order to establish an exception to discharge under § 523(a)(4), the movant must show the existence of a fiduciary duty that was breached by fraud or defalcation. *Schwager v. Fallas* (*In re Schwager*), 121 F.3d 171, 184 (5th Cir. 1997). An analysis of nondischargeability under § 523(a)(4) "involves a two-step process–state law is consulted to determine whether the requisite trust exists; however, the fiduciary nature of the relationship ultimately remains a federal question. *Clarendon Nat'l Ins. Co. v. Barrett* (*In re Barrett*), 156 B.R. 529, 533 (Bankr. N.D. Tex. 1993) (citations omitted). "[T]he concept of fiduciary under 11 U.S.C. § 523(a)(4) is narrowly defined, applying only to technical or express trusts, and not those which the law implies from the contract." *LSP Inv. P'ship v. Bennett* (*In re Bennett*), 989 F.2d 779, 784 (5th Cir. 1993) (citing *Angelle v. Reed* (*In re Angelle*), 610 F.2d 1335 (5th Cir. 1980)). "In determining whether a particular debtor was acting in a fiduciary capacity for purposes of section 523(a)(4), the Court must look to both state and federal law. The scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists." *Id.* (citing *Angelle*, 610 F.2d at 1339). Here, Aegis 2000 was a limited partnership formed in Texas, and therefore Texas law is controlling on the existence of a fiduciary duty. Thus, the Court will analyze first whether there was a fiduciary duty owed by the Debtor to the Plaintiffs, and second whether a fraud or defalcation of that duty could have occurred.

> **a.  The Debtor, as the general partner in Aegis 2000, owed a fiduciary duty to the Plaintiffs as limited partners in Aegis 2000.**

Aegis 2000 was formed for the purpose of investing monies in FAL. [Docket No. 9, ¶ 11.] The Plaintiffs, as limited partners in Aegis 2000, maintain that they "entrusted the Debtor, ostensibly the managing partner of Aegis 2000, as a fiduciary with respect to their investment in FAL." [Docket

19, ¶31.]  During the summer of 2003, the Plaintiffs allege that they learned that the Debtor was impermissibly misappropriating FAL's assets and commingling his personal assets with FAL's assets. *Id.*  The Debtor, as general partner of Aegis 2000, owed a fiduciary duty to the limited partners of Aegis 2000.[14]  "In a limited partnership, the general partner, acting in complete control, stands in the same fiduciary capacity to the limited partners as a trustee stands to the beneficiaries of the trust." *Watson v. Ltd. Partners of WCKT, Ltd.,* 570 S.W.2d 179, 182 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e.) (citing *Cook v. Peacock,* 154 S.W.2d 688, 691 (Tex. Civ. App.— Eastland 1941, writ ref'd w.o.m.)).  In *Bennett,* 989 F.2d at 787, the court stated that "Texas law clearly and expressly imposes trust obligations on managing partners of limited partnerships and these obligations are sufficient to meet the narrow requirements of section 523(a)(4)."  Relying upon *Moreno v. Ashworth,* 892 F.2d 417 (5th Cir. 1990), the Fifth Circuit found that the *Moreno* case supports the argument that "the managing partner of a limited partnership owes a sufficient fiduciary duty to the limited partners to satisfy the requirements of section 523(a)(4)." *Bennett,* 989 F.2d at 787.  Therefore, the Debtor, as general partner of Aegis 2000, owed a fiduciary duty to his co-partners the Plaintiffs.  Thus the Plaintiffs have satisfied the fiduciary capacity requirement of § 523(a)(4).

The Debtor argues there is no nexus between the fiduciary duty that he owed to the Plaintiffs as limited partners in Aegis 2000 because the Plaintiffs' factual allegations relate to actions taken against FAL, not Aegis 2000.  Thus, the Debtor argues that any claim under § 523(a)(4) for defalcation arising from those facts would belong to FAL and the duty he owed to it, not Aegis 2000, as FAL's officer:

---

[14] This Court recognizes that many Texas cases use the terms "managing partner" and "general partner" interchangeably.  The Debtor is the general partner of Aegis 2000, and thus this Court will use the term "general partner" while recognizing that in the pleadings and in other cases cited, managing partner is used synonymously.

In the present case, however, the Debtor did not use his position as an officer/director of Aegis Asset to cause any damages to the Plaintiffs as limited partners of Aegis 2000. In fact, Plaintiffs do not even allege that Debtor used his position as officer/director of Aegis Asset to cause any damaged to the limited partners of Aegis 2000. Instead, Plaintiffs merely point out that Debtor is "the sole owner and manager of Aegis Asset," but then change course and allege that the Debtor breached his fiduciary duty by "us[ing] his position as an officer of FAL."

[Docket No. 16, ¶ 27.]

The Plaintiffs will have to rely on a alter ego theory to prove that the Debtor was exclusively controlling Aegis Asset and FAL as part of a single fraudulent scheme involving both companies. The Plaintiffs allege that "[t]reating each of these [FAL and Aegis Asset] as alter egos and using their respective organizational forms as a sham, the Debtor stole more than $510,000 from FAL for his own personal benefit." [Docket No. 19, ¶31.] If the corporate forms of Aegis Asset and FAL are ignored, and the Plaintiffs can show that the Debtor operated both companies as alter egos, then the fiduciary duty the Debtor owed the Plaintiffs—based on their limited partnerships in Aegis 2000—would have been breached by actions taken against FAL. The Plaintiffs, as limited partners of Aegis 2000, have therefore satisfied the fiduciary duty requirement to bring a claim under 11 U.S.C. § 523(a)(4).

### b.     Fraud or Defalcation

Defalcation is defined as "'a willful neglect of duty, even if not accompanied by fraud or embezzlement.'" *Schwager*, 121 F.3d at 182 (quoting *Bennett*, 989 F.2d at 790). Willful neglect by a person owing a fiduciary duty is evaluated by a "recklessness standard." *Office of Thrift Supervision v. Felt* (*In re Felt*), 255 F.3d 220, 226 (5th Cir. 2001) (citations omitted). Because willfulness is evaluated objectively, it "charges the debtor with knowledge of the law without regard to an analysis of his actual intent or motive." *Id.* at 226 (citations omitted). Thus, the fiduciary is

"*presumed* to know his legal obligations." *Id.* at 227 (emphasis in original).  The Plaintiffs allege that the Debtor used over half a million dollars of FAL's money for personal expenses.  This action, if proven, would constitute a defalcation.  Thus, the Plaintiffs have been able to successfully plead a claim under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity.

### IV. CONCLUSION

The Plaintiffs' Motion for Leave to Amend Complaint is granted.  The Defendant's Motion to Dismiss for Failure to State a Claim is denied in part and granted in part.  Under § 523(a)(2)(A), the Plaintiffs have sufficiently pleaded facts to state a claim based on the PPM, but not on any oral statements made by Guerriero.  Therefore, the Defendant's Motion to Dismiss is denied as to the contents of the PPM, but is granted as to the allegations of Guerriero's statements.  Additionally, under § 523(a)(4), the Plaintiffs have successfully stated a direct claim for embezzlement against the Debtor, but will not be allowed to proceed with any derivative claims of Aegis 2000.  Finally, the Plaintiffs have stated a claim of fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4).  Therefore, the Defendant's Motion to Dismiss is denied in whole as to § 523(a)(4).

A separate order consistent with this Memorandum Opinion will be entered on the docket.

Signed on this 18th day of December, 2006.

_____

Jeff Bohm
U.S. Bankruptcy Judge